GARY L. TYSCH, ESQ. #128389
LAW OFFICES OF GARY L. TYSCH
16133 Ventura Boulevard, Suite 580
Encino, CA 91436-2411

(818) 995-9555 main
(818) 995-9550 facsimile

Attorneys for Plaintiff ARTHUR KRAVITZ

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR KRAVITZ, | CASE NO.: |
| Plaintiff, | COMPLAINT FOR: |
| v. | 1. BREACH OF INSURANCE CONTRACT; |
| PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY dba UNUM and DOES 1through 10, Inclusive, | 2. BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING; and 3. BREACH OF PLAN (RECOVERY OF PLAN BENEFITS UNDER ERISA). |
| Defendants. | |
| | (JURY TRIAL REQUESTED) |

Plaintiff ARTHUR KRAVITZ complains and alleges:

### **GENERAL ALLEGATIONS**

1.     Plaintiff ARTHUR KRAVITZ is and at all times relevant was a resident of Torrance, in the County of Los Angeles, California and a citizen of California.

2.     Defendant PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY dba UNUM (hereinafter referred to as "UNUM" and/or "Defendant")

1

**COMPLAINT**

is a Tennessee corporation licensed to do business in and is and was doing business in the State of California, as an insurer of disability insurance products.

3.      ARTHUR KRAVITZ's Complaint states a controversy over which this Court has jurisdiction. This court's jurisdiction is invoked pursuant to 29 U.S.C. § 1337 and 29 U.S.C. § 1132(e).  Some of Plaintiff's claims arise under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*. Additionally, for those claims not arising under ERISA, this Court's jurisdiction is invoked based upon the diversity of citizenship of all of the parties to this action. Venue is properly laid in this Court.

4.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to ARTHUR KRAVITZ, who therefore sues said Defendants by such fictitious names. ARTHUR KRAVITZ is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to ARTHUR KRAVITZ.  ARTHUR KRAVITZ will seek leave of this Court to amend this Complaint to insert the true names and capacities in place and instead of the fictitious names when they become known to him.

5.      At all times herein mentioned, unless otherwise indicated, Defendants were the agents and employees of each of the remaining Defendants, and were at all times acting within the purpose and scope of said agency and employment, and each Defendant has ratified and approved the acts of his/her/its agents.

6.      At all times herein mentioned, ARTHUR KRAVITZ has been a participant and/or a beneficiary of a long term disability benefit plan (hereinafter referred to as the "Plan"), which offered long-term disability coverage to ARTHUR KRAVITZ and other employees.  The subject Plan procured long term disability coverage for its employees and for ARTHUR KRAVITZ by contracting with Defendant PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY dba

1  UNUM and DOES 1 through 10, Inclusive.  Defendants UNUM and DOES 1

2  through 10, inclusive, underwrote and administered the Long Term Disability

3  PLAN and were doing business in the State of California.

4        7.    At all relevant times, ARTHUR KRAVITZ was also insured under a

5  business overhead expense policy, which policy was not a component or part of the

6  subject PLAN and which did not cover any other employees or participants other

7  than ARTHUR KRAVITZ.  ARTHUR KRAVITZ was covered as the sole

8  proprietor, owner and shareholder of his company Arthur Kravitz RPT & Associates

9  dba Cool Springs Rehab.  The business overhead expense policy issued by UNUM

10  was issued to and insured only ARTHUR KRAVITZ for expenses and liabilities

11  incurred and owed by the business and for which ARTHUR KRAVITZ was

12  personally liable as the owner, proprietor and shareholder of his company.

13

14  **FACTS**

15        8.    Prior to 1977, ARTHUR KRAVITZ was employed as a registered

16  physical therapist, performing physical therapy and other rehabilitation services to

17  patients.  In 1997, ARTHUR KRAVITZ established his own company which

18  provided physical therapy services to patients.  Upon the establishment of his

19  company, ARTHUR KRAVITZ continued to personally render physical therapy

20  services and began to manage, operate and administer his own company which hired

21  other physical, speech and occupational  therapists and provided physical therapy

22  services to various rehabilitation companies, hospitals and care centers.  Up until

23  the date of his disability in 2013, ARTHUR KRAVITZ continued to personally

24  provide physical therapy services and to administer, manage and run his own

25  company which provided physical therapy and other rehabilitation services to

26  patients of various rehabilitation companies, hospitals and care centers throughout

27  the Southern California area.

28  / / /

9.     In May 1987, Defendant UNUM issued an individual disability policy No. 06-335-774054 to ARTHUR KRAVITZ.  That policy was later replaced by policy no. 06-337-5034688, which policy became effective on October 1, 1990. These policies provided that should ARTHUR KRAVITZ become totally disabled from his own occupation and after a period of disability of at least ninety days, UNUM would pay a monthly benefit to ARTHUR KRAVITZ of no less than $15,000 per month.

10.    In or about October 1, 1990, ARTHUR KRAVITZ procured an additional, separate policy from UNUM, covering business overhead expenses for his business, Art Kravitz R.P.T. & Associates, a sole proprietorship.   Policy no. 06-1737-5034692 was issued to ARTHUR KRAVITZ and provided a monthly benefit of $11,960.  This policy provided that should ARTHUR KRAVITZ become totally disabled from his own occupation and after a period of disability of at least ninety days, UNUM would pay a monthly benefit to ARTHUR KRAVITZ of no more than $11,960.00 per month for covered business overhead expenses incurred by ARTHUR KRAVITZ's company, and that benefits would terminate once a total of $143,520.00 in benefits had been paid by UNUM.

11.    A true and correct copy of the Disability Insurance Policy is attached hereto as Exhibit "1" and is incorporated by reference as though set forth in full.  A true and correct copy of the Business Overhead Expense Policy issued by UNUM is attached hereto as Exhibit "2" and is incorporated herein as if set forth in full.

12.    The Policy required the payment of benefits within the jurisdiction of the above-entitled Court.  At all times since their inception the Disability Insurance and Business Overhead Expense Policies have remained in force.  All premiums due under these Policies have been paid, and all conditions to be performed by ARTHUR KRAVITZ have been met.

13.    In or about May, 2010, ARTHUR KRAVITZ was diagnosed with severe multilevel degenerative disc disease, as well as severe spinal stenosis, severe

**COMPLAINT**

1   spinal canal narrowing and severe bilateral foraminal narrowing in the lumbar spine.

2   As a result of these diagnoses, ARTHUR KRAVITZ was offered treatment,

3   including epidural injections, none of which provided him more than momentary

4   relief from his pain, sciatica and other symptoms.  Over time, these conditions

5   progressed and worsened and the symptoms also worsened.  Over time, ARTHUR

6   KRAVITZ's continued work as a physical therapist and administrator for his

7   rehabilitation service company caused his condition to be exacerbated and to

8   progress and worsen, such that his pain, sciatica and other symptoms also worsened

9   and increased.

10      14.   ARTHUR KRAVITZ's company employed approximately 50

11  employees, who provided physical therapy and other rehabilitation services to six

12  separate rehabilitation centers, hospitals and care centers in Torance, San Pedro and

13  Lancaster, California.  In his capacity as an administrator, owner and manager of his

14  company, ARTHUR KRAVITZ was required to spend long hours traveling to and

15  from the centers where his employees worked and driving great distances for as

16  much as two hours at a time, in order to supervise and train his employees, provide

17  hands-on training to his employees, develop treatment plans for the patients, attend

18  meetings with clients and patients and provide liaison services to his clients,

19  employees and patients on behalf of his company on a daily basis.  At times,

20  ARTHUR KRAVITZ was also required to personally perform physical therapy

21  services for the patients, when his employees took vacation and/or were ill or

22  otherwise absent.  In order to carry out his duties, ARTHUR KRAVITZ was

23  required to drive, sometimes for hours at a time, to walk to and from the facilities

24  and to the patients in the facilities, to stand while administering treatment to patients

25  and while supervising his employees, training his employees and otherwise

26  providing management and administrative services to his clients.

27      15.   As a result of his increasing symptoms, worsening condition and his

28  inability to engage in the material duties of his occupation, ARTHUR KRAVITZ

5
**COMPLAINT**

1   found it increasingly difficult to continue to engage in those duties and to provide

2   services to his clients, employees and patients.  Solely as a result of the pain,

3   incapacity and disability resulting from his severe spinal stenosis, ARTHUR

4   KRAVITZ began to provide less services to his clients, employees and patients, and

5   made fewer visits to the facilities and treatment centers where his employees and

6   clients were located.  By way of example, whereas ARTHUR KRAVITZ had visited

7   facilities in Lancaster, California on average of one time per week before his

8   diagnosis, such services were curtailed to the point that he was visiting the same

9   facilities in Lancaster, California once every three months (in the year prior to the

10   last date he worked).

11          16.    Although KRAVITZ's condition substantially impaired and interfered

12   with his ability to perform his material and substantial duties at his business, he did

13   not immediately file a claim for benefits.  It was not in his nature to consider himself

14   disabled.  Moreover, ARTHUR KRAVITZ was stoic about his condition and hid his

15   diagnoses and pain from the public.  He considered himself a professional and he

16   did not want to walk away from his business that he had operated for a period of

17   nearly twenty years nor an occupation that he had engaged in for nearly thirty years.

18    KRAVITZ was in denial that he had lost the ability to engage in his own

19   occupation.  Nevertheless, KRAVITZ was, as a result of his severe spinal stenosis,

20   unable to engage in the material and substantial duties of his occupation such that

21   he was forced to curtail his work activities, work less hours and modify the way in

22   which he engaged in his occupation.  Ultimately, because of his disability to engage

23   in his own occupation, (including, but not limited to, his inability to travel to remote

24   locations to service his clients, his inability to stand, walk, sit, and drive for long

25   periods of time, and his inability to perform physical therapy services), he lost all of

26   the contracts for business.  As a result of the cancellation of these contracts,

27   KRAVITZ worried that his business would fail, that he would not be able to pay his

28   business expenses, meet payroll, and would otherwise suffer financial peril.  The

**COMPLAINT**

stress and anxiety from these worries caused an exacerbation of his pain and symptoms of his spinal stenosis. As a result of the cancellation of the business contracts and exacerbation of his symptoms, KRAVITZ was rudely awakened to the fact that at age sixty-two he could no longer conduct his business and was incapacitated and disabled from his own occupation. He could no longer perform the same tasks of his own occupation that he had conducted before in the same or continuous way that he had previous performed the material duties of his occupation and profession.

17.     Ultimately, solely as a consequence of his disabilities, incapacities and physical limitations from the severe stenosis in his lower back, and solely as a consequence of the medical conditions and symptoms he experienced, ARTHUR KRAVITZ was forced to discontinue working in his own occupation and profession. ARTHUR KRAVITZ last worked on March 18, 2013. ARTHUR KRAVITZ timely notified UNUM of his loss and provided Proof of Loss in the forms required by defendants.

18.     In the course of providing UNUM with proof of his claims for disability and business overhead expense coverage, ARTHUR KRAVITZ outlined the substantial and material duties of his regular job and identified the duties and responsibilities that he had not been unable to perform.

19.     In or about July, 2013 and continuing for a period of nine months, ARTHUR KRAVITZ began to receive monthly disability benefits from UNUM in the amount of $15,000 per month. In or about July 2013 and thereafter, ARTHUR KRAVITZ received nominal business overhead expense benefits from UNUM in the approximate amount of $16,983.00.

20.     On April 1, 2014, UNUM unilaterally terminated payment of ARTHUR KRAVITZ's benefits under both the disability and business overhead expense policies, asserting that ARTHUR KRAVITZ could engage in his own occupation and that therefore he was entitled to no benefits. The discontinuation of long term

disability benefits to ARTHUR KRAVITZ despite his continued disability and eligibility for long term disability benefits from UNUM, is a violation of the subject Policies and gives rise to claims for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing and to an entitlement to recover plan benefits under ERISA.

21.    On or about March 18, 2013, ARTHUR KRAVITZ became totally disabled because of his numerous and severe symptoms and incapacities. ARTHUR KRAVITZ was unable to fulfill the duties and responsibilities of his own occupation. UNUM paid ARTHUR KRAVITZ benefits for his disability for the period of June 2013 through April 2014 and has paid some nominal business overhead expenses for the same period, but has failed and refused to pay long-term disability benefits and business overhead expenses to ARTHUR KRAVITZ, after April 1, 2014, has denied his entitlement to long-term disability benefits and to business overhead expense coverage and has otherwise failed to abide by the terms of the subject Policies. UNUM has acted in bad faith in failing and refusing to provide benefits to ARTHUR KRAVITZ.

22.    In compliance with the terms of the subject Policies, ARTHUR KRAVITZ has exhausted any and all claims review, administrative appeals, and appeals requirements. Alternatively, all review, appeal, administrative grievances, or complaint procedures are excused by law, are violative of KRAVITZ's due process rights, are or would be futile, or are otherwise unlawful, null, void, and unenforceable. As a result of UNUM's acts and/or omissions, UNUM is estopped from asserting that KRAVITZ has failed to exhaust his administrative remedies under ERISA.

23.    As a result of the acts, omissions and breaches of Defendants, there is, under the terms of the subject Policies, now due and owing to ARTHUR KRAVITZ from Defendants a sum of money to be determined at the time of trial. ARTHUR KRAVITZ contends that he is owed benefits from the date that long-term disability

benefits were terminated under the terms of the subject disability Policy until January 1, 2017. ARTHUR KRAVITZ contends that he is owed business overhead expense benefits under the business overhead expense policy in the approximate amount of $128,000.00.

24.     At all times material to the matters asserted herein, the actual definition of disability within California, which governed the administration of claims arising under disability insurance policies such as KRAVITZ's, was that an individual should be considered disabled if he is unable to perform the material and substantial duties of his occupation in the usual and customary manner with reasonable continuity.

25.     Defendants' conduct toward KRAVITZ was part of a long-standing corporate policy to find grounds to terminate benefits to deserving policyholders as documented repeatedly in prior regulatory examinations, findings and litigation against Defendants.  Prior to the termination of KRAVITZ's claims, the State of California accused and prohibited defendants from engaging in the following types of conduct in the administration, adjustment and handling of disability claims:

(a)     Knowingly applying a definition of "disability" in claims handling in a manner inconsistent with the definition of "total disability" as set forth in California case law;

(b)     Mischaracterizing the claimant's occupation and/or its duties in determining whether the claimant is disabled from performing with reasonable continuity the substantial and material duties of his or her own occupation;

(c)     Selectively using independent medical examinations (IMEs) to its own advantage;

(d)     Selectively using portions of medical records and IME findings to its own advantage;

(e)     Overruling the opinion of the attending physicians after in-house

medical personnel have conducted nothing more than a "paper review" of the medical file;

(f)    Failing to train claims personnel adequately or correctly on the California legal definition of disability, on how to properly evaluate a claimant's occupational duties, and on other policy provisions relevant to conducting a fair, through, and objective claim investigation;

(g)    targeting certain types of claims for "resolution" (*i.e.*, denial or termination of benefits) in the interest of improving "net termination ratios", for reasons other than the merits of individual claims for contrived reasons which were neither fair, thorough nor objective, including, but not limited to, those claims which arose from high benefit, non-cancellable long term disability income policies previously heavily marketed, which had become costly for the company through increasing claims;

(h)    Misapplying the partial and/or residual disability provisions in the policy;

(I)    Inappropriately using aggressive surveillance on a claimant and misusing the results;

(j)    Characterizing certain disabling conditions as "self-reported" or "not objectively verified" (*e.g.*, pain, limited range of motion, weakness), and then accepting only objective, test results to support disability resulting from these conditions, even though no policy provision requires objective test results;

(k)    Failing to request that its medical consultants perform objective testing that would support a finding of disability resulting from a "self-reported condition" or ignoring objective test results from the medical consultants that do support a finding of disability;

(l)    Failing to document claim files adequately regarding the so-called

"roundtable" sessions at which substantive claims decisions were made;

(m)   Continuing to seek additional information where claimants have provided adequate proof of disability, thus unfairly shifting the burden of investigation to the claimant;

(n)   Failing to disclose to the claimant additional benefits that might be available under the policy, *e.g.*, a waiver of premium or cost of living endorsement;

26.   On October 3, 2005, the Insurance Commissioner for the State of California entered an Order prohibiting the defendants from engaging in the conduct enumerated above.  The Order entered on October 3, 2005 was the result of a substantial investigation of defendants' conduct and was conducted by the California Division of Insurance.  In addition to prohibiting certain actions by the defendants in the future, the Division of Insurance also found that defendants acted improperly by:

(a)   Failing to inform IME providers of the legal definition of total disability applicable in California; and

(b)   Mis-defining occupations by, defining a person's regular occupation as that which is "normally performed in the national economy" (using the Dictionary of Occupational Titles (DOTP from the U.S. Department of Labor or deciding for itself how the occupation is performed in the national economy) instead of how the substantial and material duties are performed for a specific employer or at a specific location (as the policy was sold), thus rendering coverage potentially illusory, or, at best, treating an "own-occupation policy" as if it were an "any occupation policy."

27.   Nationally, regulators also found that defendants excessively relied upon their in-house medical personnel, unfairly constructed attending physician and

1  IME reports; failed to evaluate the totality of claimant's medical conditions; and put

2  inappropriate burdens on claimants to justify entitlement to benefits. As a

3  consequence of the regulatory investigations, defendants were required to pay fines

4  in excess of $23,000,000 and reassess thousands of claims for benefits that they had

5  previously denied or terminated. As a consequence of such reassessment processes,

6  defendants were forced to pay out or add to their reserves at least $670,000,000.

7      28.    As a consequence of the increased liabilities associated with the claim

8  reassessment processes or otherwise, defendants have resorted to the same types of

9  misconduct in which they previously engaged and for which they were ordered to

10  cease by California authorities. Defendants, if they ever ceased engaging in the

11  prohibited activities, have since returned to a claims handling process that targets

12  "certain types of claims for 'resolution" (*i.e.*, denial or termination of benefits) . . .

13  for reasons other than the merits of individual claims or fair, thorough, objective

14  investigations into those claims, such claims generally arising out of high benefit,

15  non-cancellable long term disability income policies."

16      29.    As a direct and proximate result of the aforementioned acts of

17  defendants, and each of them, KRAVITZ suffered damages including the

18  withholding of disability benefits due under the policies of insurance, with interest

19  thereon, emotional distress and anxiety in an amount to be shown at trial; and the

20  cost of legal services incurred for the purpose of obtaining benefits due under the

21  contract of insurance. As a direct and proximate result of the aforementioned acts

22  of defendants, and each of them, KRAVITZ suffered damages including the

23  complete loss of his business, the loss of his home to foreclosure, a personal

24  bankruptcy as a result of the financial hardship occasioned and caused by the

25  deprivation of benefits under the subject Policies, a marital separation and

26  dissolution, and other consequential, emotional distress and general damages

27  according to proof at trial.

28  / / /

**FIRST COUNT:**

**FOR BREACH OF THE BUSINESS OVERHEAD EXPENSE**

**INSURANCE CONTRACT (AS AGAINST ALL DEFENDANTS)**

30.     ARTHUR KRAVITZ hereby incorporates each and every paragraph of the balance of the Complaint as though fully set forth in this cause of action.

31.     At all relevant times, ARTHUR KRAVITZ was insured by UNUM under a business overhead expense policy, which became effective for him on or about October 1, 1990.  The subject Policy promised to pay business overhead expenses of no more than $11,960.00 each  month in the event of ARTHUR KRAVITZ's disability, subject to a ninety-day elimination period and a maximum benefit amount of $143,520.00.

32.     On or about March 18, 2013, ARTHUR KRAVITZ became totally disabled and unable to perform the substantial and material duties of his own occupation with reasonable continuity and in the usual way, due to severe spinal stenosis and other conditions.  Thereafter, ARTHUR KRAVITZ's disability continued unabated such that he was completely incapacitated.

33.     ARTHUR KRAVITZ submitted his claim for disability benefits to UNUM in accordance with the terms of the Policy and applicable law and promptly furnished proof of loss in the form requested by UNUM.

34.     After paying long term disability benefits from June 2013through April 1, 2014, UNUM breached the insurance contract by refusing, without proper cause, to pay business overhead expense coverage and benefits under the Policy.

35.     As a direct and proximate result of UNUM's breach of the insurance contract, ARTHUR KRAVITZ has suffered contractual damages under the Policy and other, incidental damages, consequential damages, and out-of-pocket expenses, all in a sum to be determined at the time of trial.

36.     ARTHUR KRAVITZ is entitled to prejudgment interest on the benefits which have been withheld by UNUM.

**COMPLAINT**

## SECOND COUNT:

### FOR TORTIOUS BREACH OF THE COVENANT OF
### GOOD FAITH AND FAIR DEALING PERTAINING TO THE
### DENIAL OF BUSINESS OVERHEAD EXPENSE COVERAGE
### (AS AGAINST ALL DEFENDANTS)

37.   ARTHUR KRAVITZ hereby incorporates each and every paragraph of the balance of the Complaint as though fully set forth in this cause of action.

38.   UNUM has tortiously breached its duty of good faith and fair dealing owed to ARTHUR KRAVITZ in the following respects:

(a)   By its unreasonable and bad faith failure to pay the Policy benefits to ARTHUR KRAVITZ at a time when UNUM knew that ARTHUR KRAVITZ was entitled to them under the terms of the Policy;

(b)   By its unreasonable and bad faith withholding of payments from ARTHUR KRAVITZ, knowing ARTHUR KRAVITZ's claim for benefits to be valid;

(c)   By unreasonably and in bad faith misrepresenting to ARTHUR KRAVITZ pertinent facts and insurance Policy provisions relating to the coverage in issue;

(d)   By its unreasonable and bad faith failure to reasonably investigate and process ARTHUR KRAVITZ's claim for Policy benefits;

(e)   By its unreasonable and bad faith failure to attempt to effectuate a prompt, fair, and equitable settlement of ARTHUR KRAVITZ's claim for benefits when liability had become reasonably clear;

(f)   By its unreasonable and bad faith misrepresentation to ARTHUR KRAVITZ of the law applicable to

1    ARTHUR KRAVITZ's claim;

2        (g)    By placing its interests above those of ARTHUR

3               KRAVITZ;

4        (h)    By its unreasonable and bad faith failure to adhere

5        to applicable law in the processing of ARTHUR

6        KRAVITZ's claim for benefits; and

7        (I)    By unreasonably forcing its insured to resort to

8        litigation in order to obtain benefits that are rightfully

9        theirs.

10       39.    ARTHUR KRAVITZ is informed and believes and thereon alleges that

11   UNUM has breached its duty of good faith and fair dealing owed to ARTHUR

12   KRAVITZ by other acts or omissions of which ARTHUR KRAVITZ is presently

13   unaware. ARTHUR KRAVITZ will seek leave of this Court to amend this

14   Complaint at such time as he discovers the other acts or omissions of UNUM

15   constituting further breach of his contract.

16       40.    As a proximate result of the aforementioned wrongful conduct of the

17   defendant, ARTHUR KRAVITZ has suffered, and will continue to suffer in the

18   future, damages under the Policy, plus interest, for a total amount to be shown at the

19   time of trial.

20       41.    As a further proximate result of the aforementioned wrongful conduct

21   of UNUM, ARTHUR KRAVITZ has suffered, and will continue to suffer, anxiety,

22   worry, mental and emotional distress, and other incidental damages and out-of-

23   pocket expenses, all to ARTHUR KRAVITZ's general damages in a sum to be

24   determined at the time of trial.

25       42.    As a further proximate result of the aforementioned wrongful business

26   practices and conduct of UNUM,. ARTHUR KRAVITZ was compelled to retain

27   legal counsel to obtain the benefits due under the subject Policy.  Therefore, UNUM

28   is liable to ARTHUR KRAVITZ for those attorney fees incurred by her in order to

1  obtain the benefits under the Policy in a sum to be determined at the time of trial.

2       43.    UNUM's business practices and conduct described herein were

3  intended to cause injury to ARTHUR KRAVITZ or were despicable conduct carried

4  on by the defendant with a willful and conscious disregard of the rights of

5  ARTHUR KRAVITZ, subjecting ARTHUR KRAVITZ to cruel and unjust hardship

6  in conscious disregard of ARTHUR KRAVITZ's rights, and were intentional

7  misrepresentations, deceit or concealment of material facts known to UNUM with

8  the intent to deprive ARTHUR KRAVITZ of property, legal rights, or to otherwise

9  cause injury, such as to constitute malice, oppression, or fraud under California

10  Civil Code § 3294, thereby entitling ARTHUR KRAVITZ to punitive and/or

11  exemplary damages in an amount appropriate to punish and/or set defendant as an

12  example.

13

14  **THIRD COUNT:**

15  **FOR BREACH OF PLAN RELATING TO LONG**

16  **TERM DISABILITY COVERAGE, PURSUANT TO 29 U.S.C.**

17  **SECTION 29 U.S.C. CODE SECTION 1132(a)(1)(B)**

18  **[AS AGAINST ALL DEFENDANTS]**

19       44.    The allegations of all previous paragraphs are incorporated herein by

20  reference as if set forth in full.

21       45.    Defendants delivered to ARTHUR KRAVITZ a disability insurance

22  policy or policies.

23       46.    Under the terms of the long term disability insurance policy,

24  Defendants agreed to provide KRAVITZ with disability coverage if he became

25  totally disabled.

26       47.    In or about March 2013, KRAVITZ became totally disabled and

27  requested disability benefits from Defendants.  Defendants have failed and refused

28  to pay long term disability benefits as of April 1, 2014. KRAVITZ's treating

16

1   physicians have determined that he is totally disabled from his own occupation and

2   do not foresee any change in his status.

3         48.    The denial of disability payments constitutes a breach of the insurance

4   plan between Defendants and KRAVITZ.  KRAVITZ seeks reimbursement and

5   compensation for any and all disability payments which he would have received and

6   to which he will be entitled as a result of Defendants' failure to pay disability

7   coverage, in an amount presently unknown but to be set forth at the time of trial.

8         49.    Defendants have arbitrarily and capriciously breached the obligations

9   set forth in the Plan issued by Defendants, and each of them.  Defendants, and each

10  of them, have arbitrarily and capriciously breached their obligations under the

11  ERISA Plan to provide KRAVITZ with long term disability benefits.

12        50.    As a direct and proximate result of the aforementioned conduct of

13  Defendants in failing to provide KRAVITZ disability benefits, KRAVITZ has been

14  damaged in an amount equal to the amount of benefits KRAVITZ should have

15  received had Defendants paid the disability payments as required.

16        51.    As a direct and proximate result of the aforesaid conduct of Defendants

17  in failing to provide disability coverage as required, KRAVITZ has suffered, and

18  will continue to suffer in the future, damages under the policy, plus interest and

19  other economic and consequential damages, for a total amount to be determined at

20  the time of trial.

21        52.    To the extent that any of the Defendants assert that they are entitled to

22  discretionary authority to construe the terms of the Plan or Policy or to make benefit

23  determinations, California Insurance Code § 10110.6 renders void and

24  unenforceable any grant of discretionary authority to interpret the terms of a

25  disability insurance policy that provides coverage for California residents and that

26  was issued or renewed on or after January 1, 2012.  As such, any discretionary

27  clauses that would otherwise have been effective in this case are void and

28  unenforceable.

**COMPLAINT**

53.   KRAVITZ is entitled to prejudgment interest at the rate of 10% per annum, in accordance with California law.

## PRAYER FOR DAMAGES

**WHEREFORE**, plaintiff ARTHUR KRAVITZ, prays for judgment against Defendants UNUM and DOES 1-10 as follows:

FOR THE FIRST CAUSE OF ACTION:

1.   For damages for failure to provide benefits under the Policy and other consequential damages;

2.   For prejudgment interest, including interest under California Insurance Code §10111.2;

3.   For costs of suit incurred herein; and,

4.   For such other further relief the Court may deem appropriate.

FOR THE SECOND CAUSE OF ACTION:

1.   For damages for failure to provide benefits under the Policy and other consequential damages;

2.   For general damages for anxiety, mental and emotional distress, and other incidental damages in a sum to be determined at trial;

3.   For punitive and/or exemplary damages pursuant to California Civil Code § 3294 in an amount appropriate to punish or set an example of the Defendants;

4.   For compensatory and/or consequential damages in accord with proof adduced at the time of trial;

5.   For attorneys' fees reasonably incurred to obtain the Policy benefits in a sum to be determined at the time of trial pursuant to applicable law;

6.   For prejudgment interest, including interest under California Insurance Code § 10111.2;

7.   For costs of suit incurred herein; and,

8.   For such other further relief the Court may deem appropriate.

18

**COMPLAINT**

1   <u>FOR THE THIRD CAUSE OF ACTION</u>:

2       1.    For benefits payable under the disability insurance policy to reimburse

3   ARTHUR KRAVITZ for disability payments that KRAVITZ has been entitled to

4   receive;

5       2.    For reasonable attorneys' fees and costs; and

6       3.    For such other relief as the court deems appropriate.

7   Dated: December 15, 2015        LAW OFFICES OF GARY L. TYSCH

8

9                   By: _____

10                     GARY L. TYSCH
                   Attorneys for Plaintiff ARTHUR

11                     KRAVITZ

12

13                   **<u>DEMAND FOR JURY TRIAL</u>**

14      Plaintiff hereby demands a jury trial as provided by law.

15  Dated: December 15, 2015        LAW OFFICES OF GARY L. TYSCH

16

17                  By: _____

18                     GARY I. TYSCH
                   Attorneys for Plaintiff ARTHUR

19                     KRAVITZ

20

21

22

23

24

25

26

27

28

**COMPLAINT**